SUPERIOR COURT OF THE STATE OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| SHEELA URSAL,<br><br>　　　　　　　　　Plaintiff,<br><br>Vs.<br><br>AMAZON, INC.<br><br>　　　　　　　　　Defendants. | No.<br><br>COMPLAINT FOR DAMAGES |

COMES NOW the Plaintiff by and through her attorney of record, Rodney R. Moody, and hereby alleges as follows:

## I. INTRODUCTION

1.1  This Complaint is brought alleging multiple statutory and common-law causes of action including disability discrimination, violations of the Washington Law Against Discrimination, and negligent infliction of emotional harm.

## II. JURISDICTION AND VENUE

2.1  The acts and omissions complained of below occurred in King County, Washington.

2.2  Venue is proper in this Court as the acts complained of occurred in Snohomish County.

## III. PARTIES

3.1  Plaintiff Sheela Ursal presently resides in California.

3.2  Amazon, Inc. is a corporate entity licensed to do business in the State of Washington.

COMPLAINT FOR DAMAGES
Page 1 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

## IV. FACTS

4.1 In December 2014 Ursal accepted a position at Amazon as a Senior Product Manager Payments. Because of the acceptance of this position Ursal sold her residence in the San Francisco area and relocated to Washington State.

4.2 Ursal's official manager was Samir Mehta, who was the VP of Digital Content Commerce Platform at Amazon. Her work was largely supervised by Kumar Brahnmath. He held regular meetings with Ursal and a group of three younger Asian males who worked on the same project as Ursal. Mr. Brahnmath as well as the three male co-employee's had engineering backgrounds, but no payments product management experience.

4.3 The disdain for Ursal gender was immediately apparent. During meetings Mr. Brahnmath would routinely make comments of sexual innuendo and crude sexually oriented jokes. These offensive comments and jokes would be directed at Ursal.

4.4 Ursal was initially employed as a Senior Product Manager in Payments. This position was a position typically into which a newly hired an experienced individual would be initially assigned. Ursal was assured by Mehta that she would be rapidly promoted into a more senior position. When a more senior position became available in the fall of 2015 the position was filled by a Caucasian male with no experience in the payments area. Ursal was passed over for this position despite her significantly greater experience because of her gender.

4.5 Brahnmath would refer to various project as "balls" referring to having balls in the air and then suggestively say to Ursal, "Sheela, you have my balls are in your hands." Ursal found this joke offensive.

4.6 Brahnmath would also make comments with a provocative smirk stating, "Payments is a black hole, and I need to dig into it and see what comes out." While making this comment he would make a

COMPLAINT FOR DAMAGES
Page 2 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

digging gesture with his finger directed at Ursal. Brahnmath as well as the three male co-employees frequently would laugh at these remarks.

4.7   Ursal's discomfort with the suggestive comments was immediately apparent. Her obvious discomfort encouraged the actions of Brahnmath and her co-employees. Brahnmath would weave 9sexual comments into the conversation by stating "balls" and "plug the hole" as frequently as possible.

4.8   Brahnmath and his male team were openly hostile and disrespectful to Ursal. She would be insulted, excluded from meetings, and the team would dismissively disregard any suggestions she would make even though these individuals lacked the Payments expertise that was possessed by Ursal. Ursal was also given obviously gender related work such as planning social outings and coordinating schedules which had nothing to do with her qualifications.

4.9   Ursal was also subjected to similar harassment during conference calls with Brahnmath's extended team in India. Ursal would typically be the only female in meetings and on calls with 25 to 40 male employees. Brahnmath would encourage comments such as, "let's get behind Sheela and push hard on this one." The males in the conversation or meeting would then break into laughter.

4.10  Brahnmath would frequently make comments referring to "hard declines" while slowly pronouncing it with strategic emphasis so that it would sound like "hard dick lines." Brahnmath would make comments such as "Sheela, have you seen the hard Dick lines and what are you going to do about them?"

4.11  Sexualized comments, innuendo and conduct was frequently directed at Ursal which made her feel embarrassed and offended.

4.12  On multiple occasions Ursal notified her manager, VP Mehta, of her concerns regarding the sexual comments and innuendo from Brahnmath and the male team of engineers to which she was

COMPLAINT FOR DAMAGES
Page 3 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

subjected on a continuous basis. Mehta refused to address these concerns despite being Brahnmath's supervisor. Instead, Mehta directed Ursal to enter complaints regarding Brahnmath and the male employees into Amazon's internal system for evaluation of coworkers. Ursal informed Mehta that she was concerned this would make the harassment worse; but Mehta insisted he would take no action unless she entered this information into the system.

4.13 Being unable to obtain assistance from her manager Ursal sought advice from a female director in the company. Shortly thereafter Helene Bouffard from Human Resources contacted Ursal. These two individuals discussed this matter approximately one dozen times during which Ursal consistently described the harassing comments and sexual hostility she was experiencing in the workplace.

4.14 After investigating the allegations from Ursal, Bluford confirmed that the sexually loaded remarks were being made, but she dismissed them as "common English expressions." This conclusion disregarded the intent, tone, and context of the comments being made. It also disregarded the men's laughter which invariably followed these comments which had been directed specifically at Ursal.

4.15 Once it became clear that HR would take no action regarding the harassing comment conduct being experienced by Ursal, Brahnmath and her fellow male co-employees became emboldened.

4.16 In June 2015 Ursal was invited to a team lunch with several out-of-town male employees on Mehta's team. The meal was originally scheduled at a high-end restaurant but was changed at the last moment to a sausage and beer pub familiar to the male employees. During the meal Mehta who was well aware of the HR investigation and Ursal's complaints singled her out and asked her in front of the group, "How do you like your sausage, Sheela?" This question was repeated twice by Mehta. The male attendees laughed at this comment. Ursal was highly upset by this question. At

COMPLAINT FOR DAMAGES
Page 4 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

her desk this afternoon Ursal was emotionally upset and crying. She left work early this day being unable to accomplish any work following her embarrassment.

4.17  Recognizing that HR would take no action regarding this harassing conduct Ursal felt her only choice was to either resign her employment at Amazon or transfer away from this unit. Ursal was concerned that Mehta had entered negative and inaccurate statements about her work performance and Amazon's employee review system in retaliation for her complaints to HR.

4.18  In October 2015 Ursal took it upon herself to find and transfer to a new project business division within Amazon called AWS (Amazon web services).

4.19  Ursal hoped that her work experience would improve with this transfer. HR and her new AWS managers were aware of Ursal's previous complaints of sexual harassment with her prior assignment and regardless allowed the sexual harassment to continue. Mehta, her new manager and HR got together before Ursal's transfer and discussed her work experience with Mehta's team.

4.20  At AWS she was seated facing a male employee, Nanda Rajagopalan. Rajagopalan would regularly make sexist comments to her such as "you need to prove to me that you are not just a pretty face," or "go get a beer for me and make yourself useful." These comments were gender oriented sexually harassing comments.

4.21  Ursal spoke with Rajogopalan directly and told him how offensive these comments were to her. She asked him specifically to stop making such comments, but he did not appear to take her request seriously and instead declared that HR would take no action regarding this. He continued to make such comments to her despite her specific request.

4.22  At one-point Rajagopalan did respond to Ursal's request he not make such comments to her by stating, "Absolutely fair for you to feel like this, please accept my humble apologies." Despite this he did not stop making such comments.

COMPLAINT FOR DAMAGES
Page 5 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

4.23   When Ursal realized that Rajagopalan was not going to stop his actions she arranged a meeting with Rajagopalan's manager and her own manager to discuss these concerns. The two managers suggested she put her complaints in writing and email them to the employee complaint system. Ursal was left with no choice but to file a complaint via email regarding Rajagopalan's actions.

4.24   Ursal learned that her experience is not unique among the women employees at Amazon. Ursal attended multiple AWS Women in Commerce Platform sessions whereby 40 women shared their stories of troubling sexism, harassment, and gender bias at the company. This was especially true for women who worked with the predominantly male engineers at Amazon.

4.25   Following Ursal's complaint to HR regarding her experience at AWS, HR informed Ursal that her complaints about Rajagopalan were in fact corroborated, but they did not constitute a violation of Amazon's policies.

4.26   Ursal encountered further sexism from her new manager, John Reed who was a Senior Manager in AWS. When speaking with Ursal, Reid referred to his office as his "bachelor pad" and commented to her on his multiple divorces stating, "As long as that stick down there is happy, I'm happy."

4.27   Reed made it a point to humiliate Ursal at work. He frequently yelled at and insulted Ursal in meetings when she asserted her professional opinions on payments even though he himself had little background on that topic. Read would also frequently make Ursal work in the office very late and on occasion added additional work for her to accomplish which she would give to her at 5 PM on Fridays.

4.28   Another supervisor of Ursal, Keith Carlsen, was a director who would openly and deliberately humiliate Ursal in an unacceptable way is by calling her a "holy cow" and mocking her physical injury by imitating her limp following her injury automobile accident. On one occasion Ursal had a bloodied knee as the result of a motor vehicle accident which Carlson referred to as her

COMPLAINT FOR DAMAGES
Page 6 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

menstruation. Carlson also told others that Ursal's four-month disability leave was a disguised pregnancy leave.

4.29  Carlson also disparaged Ursal to people outside of Amazon, including payment vendors in the San Francisco area where Ursal was known in the payments field.

4.30  Ursal was openly ridiculed for complaining to HR regarding the sexual harassment and mistreatment she was experiencing. Charlie Flynn, a director at AWS stated to Ursal any team meeting where Ursal was the only woman, "she left you like to wash her dirty laundry in front of others." "This will come back to bite you in the butt." Following this comment the males in the room laughed in unison.

4.31  Ursal reached out to Diane Gonzalez, VP in the AWS program several times in hopes of receiving a assistance regarding the sexual harassment she was experiencing. Gonzalez's only response to Ursal was that Flynn was handling the situation and she did not want to intervene.

4.32  In October 2016 Ursal tried to set up a meeting with Kurt Kufield who was a VP that had addressed the group of women who shared their experiences of harassment. Ursal informed HR of her attempts to arrange a meeting with Kufield, and she was terminated from employment immediately thereafter on October 17, 2016.

4.33  In March 2016 Ursal received her one-year review. She was not given an opportunity to discuss it with her manager prior to the review being entered into the Amazon system. The bulk of this review was written by Mehta who had left Amazon several months earlier. Her new manager, Manoj Gadkari, had little experience with Ursal so he relied on comments from Mehta and the team of male engineers that Ursal had complained about to HR.

4.34  Mehta and Brahnmath had in fact retaliated against her with negative and false comments in their review. This review omitted any discussion of a document prepared by Ursal which exceeded 100

COMPLAINT FOR DAMAGES
Page 7 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

pages in length that detailed the 20 separate different projects Ursal had initiated which were a strategic benefit to Amazon. Despite requesting the opportunity for a new review as had routinely been granted to others, Ursal's request was denied. Based upon this false one-year review, Ursal was placed on a coaching plan.

4.35   As a result of the continuous harassment experienced by Ursal she became severely depressed and was required to take a four month leave of absence from work upon the advice of her physician. As a result of the stress she experienced debilitating fatigue and high blood pressure making the simplest of tasks difficult to manage. Ursal returned to work in mid-September 2016, but her employment was terminated several weeks later on October 17, 2016. The coaching plan given to Ursal in March 2016 indicated that she would be placed on a Performance Improvement Plan if she did not demonstrate improvement, but Amazon terminated her employment without ever giving her a PIP. This also occurred one day after she requested a meeting with Kurfield.

### V. DISCRIMINATION: DISABILITY

5.1   Ursal hereby re-alleges the preceding paragraphs as if fully set forth herein.

5.2   During her course of employment Ursal suffered from depression and emotional distress as a direct result of the sexually hostile work environment to which she was subjected.

5.3   Amazon management was aware Ursal suffered from this disability.

5.4   Ursal took a four-month leave of absence beginning in May 2016 based on the specific recommendation of her physician.

5.5   Immediately upon her return to work in October 2016, Ursal's employment was terminated because she had utilized her statutorily protected right to take a leave of absence pursuant to the Family Medical Leave Act.

COMPLAINT FOR DAMAGES
Page 8 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

5.6  As a direct and proximate result of the above described discriminatory behavior on the part of Amazon, Ursal has suffered financial damages in an amount to be established at trial.

## VI. DISCRIMINATION: HOSTILE WORK ENVIRONMENT

6.1  Ursal hereby realleges the preceding paragraphs as if set forth in full.

6.2  Ursal is female and therefore a member of a protected category pursuant to RCW 49.60.180.

6.3  Ursal experienced an adverse employment action when management for Amazon directed sexually oriented comments and jokes specifically at Ursal.

6.4  This hostile work environment was created solely because of Ursal's gender, female, and was unwelcome by her.

6.5  Management as well as numerous male employees for Amazon discriminated against Ursal with management's knowledge and approval because of her gender, female.

6.6  Ursal has experienced general and special damages in an amount to be established at trial.

## VII. RETALIATION, RCW 49.60.210

7.1  Ursal hereby realleges the preceding paragraphs as if set forth in full.

7.2  Ursal as detailed above made numerous complaints regarding the hostile work environment based upon her gender and disability outlined above.

7.3  Immediately upon her return from a four-month leave of absence in October 2016, Ursal sought an appointment with the VP of the project upon which she was working, Kurfield. One day after seeking this appointment her employment was terminated in retaliation for the complaints that she had made to HR as well as a variety of supervisors regarding the sexually hostile work environment to which she was subjected.

7.4  Ursal has experienced general and special damages in an amount to be established at trial.

COMPLAINT FOR DAMAGES
Page 9 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941

## VIII. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

8.1 Ursal re-alleges the preceding paragraphs as fully set forth herein.

8.2 Amazon owes Ursal a duty not to negligently inflict emotional distress upon her.

8.3 Amazon has breached its duty to Ursal and negligently inflicted emotional distress upon her.

8.4 As a direct and proximate result of the acts of Amazon, Ursal has suffered special and general damages in an amount to be established at trial.

## IX. FALSE LIGHT

9.1 Ursal hereby realleges the preceding paragraphs as if fully set forth herein.

9.2 Ursal was employed for a significant length of time in the Purchasing realm in the San Francisco area.

9.3 During her employment with Amazon Ursal's supervisors made negative and demeaning comments regarding Ursal to individuals in the San Francisco area who had personal knowledge of Ursal and her performance skills and abilities.

9.4 The comments made by Ursal's supervisors to individuals in the San Francisco area had the effect of castings Ursal in a false and negative light.

9.5 Ursal has experienced both general and special damages in an amount to be established at trial.

## X. JURY DEMAND

10.1 Plaintiff demands a jury trial.

## XI. PRAYER FOR RELIEF

WHEREFORE having stated the preceding causes of action Plaintiff does hereby pray for relief as follows:

1. For general damages in an amount to be proved at trial;

2. For special damages;

3. For an award of reasonable attorney's fees pursuant to RCW 49.60 et. seq.;

COMPLAINT FOR DAMAGES
Page 10 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940  Fax (425) 740-2941

4. For costs of the suit herein; and

5. For such other and further relief as the court deems just and proper.

DATED this 16th day of October, 2019.

> *[signature]*
> Rodney R. Moody, WSBA #17416
> Attorney for Plaintiff

COMPLAINT FOR DAMAGES
Page 11 of 11

*Law Office of*
**RODNEY R. MOODY**
2707 Colby Ave., Ste. 603
Everett, WA 98201
WSBA #17416
(425) 740-2940   Fax (425) 740-2941